Jtw: 08.08.19



```
         FILED
    U.S. DISTRICT COURT
    DISTRICT OF MARYLAND

    2019 OCT -1  PM 2:U.S. Department of Justice

    CLERK'S OFFICE United States Attorney
    AT BALTIMORE District of Maryland

    BY____h.s_____ DEPUTY
```

| | | |
|---|---|---|
| *Daniel A. Loveland, Jr.* | *Suite 400* | *DIRECT: 410-209-4973* |
| *Assistant United States Attorney* | *36 S. Charles Street* | *MAIN: 410-209-4800* |
| *Daniel.Loveland2@usdoj.gov* | *Baltimore, MD 21201-3119* | *FAX: 410-962-3091* |

August 8, 2019

David Fischer
Fischer & Putzi, PA
Empire Towers, Suite 300
7310 Ritchie Hwy.
Glen Burnie, MD 21061
fischerandputzi@hotmail.com

*Sent via e-mail*

Re:   *United States v. Kelvin McFadden*, JKB-19-271

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Kelvin McFadden ("Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office" or "the Government") (together, "the parties"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **August 29, 2019**, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense of Conviction

1.   The Defendant agrees to plead guilty to Count Three of the Indictment, which charges the Defendant with Affecting Commerce by Robbery, in violation of 18 U.S.C. § 1951(a). The Defendant admits that the Defendant is, in fact, guilty of the offense and will so advise the Court.

### Elements of the Offense

2.   The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Indictment, in the District of Maryland, the Defendant

   a.   *First*, knowingly obtained or took the personal property of another, or from the presence of another;

Rev. August 2018

  b. *Second*, the Defendant took this property against the victim's will, by actual or threatened force, violence, or fear of injury, whether immediately or in the future; and

  c. *Third*, as a result of the Defendant's actions, interstate commerce, or an item moving in interstate commerce, was delayed, obstructed, or affected in any way or degree.

### Penalties

3. The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| Count | Statute | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|
| 3 | 18 U.S.C. § 1951(a) | 20 years | 3 years | $250,000 | $100 |

  a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

  b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

  c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

  d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

  e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

  f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay,

and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Waiver of Rights

4.     The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

      a.     If the Defendant had pleaded not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

      b.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

      c.     If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

      d.     The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

      e.     If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

      f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be

admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

    g.  If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

    h.  By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.  The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.  This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

## Count 3 Affecting Commerce by Robbery (18 U.S.C. § 1951(a))

    a.  **Base Offense Level:** This Office and the Defendant further agree that the applicable base offense level for the count of count of conviction is **20** pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2B3.1(a).

    b.  **Use of a Dangerous Weapon:** This Office and the Defendant further stipulate and agree that pursuant to U.S.S.G. § 2B3.1(b)(2)(E), there is a **three-level increase** for the use of a "dangerous weapon, *i.e.* the Black Crossman 1911BB Air Pistol.

c. **Offense Level Subtotal:** Thus, the adjusted offense level for the count of conviction is **23**.

### Relevant Conduct
### (Three Other Instances of Affecting Commerce by Robbery, 18 U.S.C. § 1951(a))

d. **Offense Level:** The parties stipulate and agree that pursuant to U.S.S.G. § 1B1.2(c), the Defendant's relevant conduct set forth in the stipulated factual basis (Attachment A) constitutes three additional and separate violations of Affecting Commerce by Robbery, as listed in the below chart, and in violation of 18 U.S.C. § 1951(a). As with the count of conviction, this Office and the Defendant agree that the applicable offense level for each of the three additional and separate violations is **23** pursuant to pursuant to U.S.S.G. §§ 2B3.1(a), (b)(2)(E).

### Grouping and Resulting Offense Level

e. **Offenses Do Not Group:** Pursuant to U.S.S.G. § 3D1.2, the Office and the Defendant agree that the offense of conviction and the instances of relevant conduct as agreed and stipulated to are excluded from grouping because they are covered by U.S.S.G. § 2B3.1.

f. **Combined Offense Level:** Pursuant to U.S.S.G. § 3D1.4 the Office and the Defendant agree that the combined offense level, prior to any reduction for acceptance of responsibility, is **27**, calculated as follows:

| GROUP | OL | UNITS |
|---|---|---|
| 1- 8/21/2018 Robbery | 23 | 1 |
| 2- 8/25/2018 Robbery | 23 | 1 |
| 3- 8/28/2018 Robbery | 23 | 1 |
| 4- 9/1/2018 Robbery (Count 3) | 23 | 1 |
| TOTAL | 23+4 | 27 (+4 per U.S.S.G. § 3D1.4) |

g. This Office does not oppose a **2-level** reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1-level** decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way. Thus, the parties anticipate **a final offense level of 24** after accounting for acceptance and per the terms of this paragraph.

7.   There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8.   Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

9.   At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment or conduct that is not the subject of any counts of the Indictment. *See* 18 U.S.C. § 3661. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

10.   In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a.   The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b.   The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the correctness of any calculation related to the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c.   The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

11.     The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

12.     The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

13.     The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

14.     The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Defendant's Conduct Prior to Sentencing and Breach

15.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

16.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal

Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

17. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

18. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

Daniel A. Loveland, Jr.
Clinton J. Fuchs
Assistant United States Attorneys

   I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

9/5/19
Date

Kelvin McFadden

   I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

9/5/19
Date

David Fischer, Esq.

## **ATTACHMENT A**

## **STIPULATION OF FACTS**

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Over the course of twelve days, Kelvin McFadden and his co-defendant, Stewart Williams, committed a series of robberies at GameStop stores, by using actual and threatened force to take the property of the stores from victim employees. The goods sold by GameStop, and stolen by McFadden and Williams, include electronic retail goods such as video game systems. The goods that GameStop sells, and that were stolen by McFadden and Williams, traveled in and affected interstate commerce. McFadden and Williams entered into an agreement to jointly commit the robberies, by unlawfully taking the property of others by actual or threatened force, and by doing so, to effect interstate commerce. The robberies occurred at the following locations and times.

| | |
|---|---|
| 8/21/2018 | 3611 Washington Blvd, Halethorpe, MD 21227 |
| 8/25/2018 | 6901 Security Blvd, Baltimore City, MD 21207 |
| 8/28/2018 | 1004 Taylor Ave, Towson, MD 21286 |
| 9/01/2018 | 6370 York Rd, Baltimore, MD 21212 |

Each robbery followed the same pattern and mode of operation: Kelvin McFadden and Stewart Williams entered a store, accosted the victim employees who worked at that store while brandishing what appeared to be a gun, stole money from cash registers and/or safes, and forced victim employees into the store's "backroom" which contains electronic goods of high monetary value, including video game systems. There, McFadden and/or Williams stole video game systems. In each robbery, Kelvin McFadden and Stewart Williams stole a number of game systems and cash. Each of these robberies was captured on GameStop's security cameras, which are located throughout each of the retail stores.

The first of the four robberies of GameStops occurred on or about August 21, 2018 at or near 3611 Washington Boulevard, Halethorpe, Maryland. After entering the store, McFadden and Williams approached the registers. Williams leaned on the counter, holding what appeared to be a gun, and said something like "we not trying to hurt you." McFadden then took a victim employee by the arm and forced that employee into the backroom, where the store keeps stock, including high-value merchandise and video game systems. Meanwhile, Williams went behind the counter and forced a second victim employee to assist him with stealing money from the registers and from

the safe. McFadden returned from the back room to the register area, retrieving Williams and the second victim employee, whereupon everyone entered the backroom. Williams and McFadden both stole video game systems from that backroom, before leaving the store. The stores cameras captured the robbery, and captured video footage of Williams's and McFadden's faces as the two departed the store. The pair were each wearing distinctive clothing, including that, notably, Williams was wearing a light and black "Spurs" baseball hat. The property stolen from the store included:

- $874.00 in U.S. Currency
- 1 Xbox1X (SKU 158467; Serial # 158281174417)
- 1 Playstation 4 Slim Gold (SKU 149853; Serial # MD413717441)
- 1 Playstation 4 1 Terabyte Core (SKU 147255; Serial # MG357685516)

The second robbery occurred on or about August 25, 2018 at or near 6901 Security Boulevard in Baltimore City, Maryland. Following the same pattern and mode of operation, Williams and McFadden entered the GameStop store at that location. After McFadden feigned that he was browsing the inventory, Williams walked to the register, pulled out what appear to be a gun, pointed it at a victim employee, and ordered that employee to open the register. McFadden then walked behind the counter and ordered a second victim employee to open a register. While Williams forced a victim employee to open the registers and the safe and empty money into a bag, McFadden took the second victim employee into the backroom. McFadden then ordered the second victim employee to put video game systems into a black trash bag. Meanwhile, Williams finished stealing money from the registers and safe, and forced the first victim employee into the backroom, where Williams began also stealing video game systems. McFadden and Williams ordered the victim employees down to the ground before leaving the store. Once again, video cameras captured Williams and McFadden and the clothing that they were wearing. This time McFadden was wearing a light and black "Spurs" baseball hat, which matched the one Williams wore while robbing the first GameStop, four days prior. Williams was wearing a black "polo" shirt, with a white logo on the front. The property stolen from the store included:

- $2,839.58 in U.S. Currency
- 2 Playstation 4 Systems Refurbished (SKU 909276)
- 1 Playstation 4 System PO (SKU 909275)

Investigators obtained a search warrant for Kelvin McFadden's Instagram account. Among other evidence, the search warrant return from Instagram included several videos that were linked with McFadden's Instagram account, and based on information from the returns, were posted by the account during late on August 25, 2018 or early onAugust 26, 2018. One video depicts Stewart Williams dancing. Williams is wearing the black polo with the white logo that he wore during the robbery. While dancing, Williams flashes a wad of U.S. currency. An Instagram user commented on the video "my n**** stew". A video posted later depicts McFadden and Williams dancing at a club while music is playing. Both are waving around wads of money. Another video, posted by McFadden's account with the caption, "Almost caught this n****" depicts Williams sitting in the front seat of McFadden's car.

The third GameStop robbery occurred on or about August 28, 2018 at or near 1004 Taylor Avenue, Towson, Maryland. Proceeding in much the same way as the first two, Williams walked around the story before walking towards the counter, pulling out what appeared to be a handgun, pointing it at two victim employees, and saying something like, "You already know what it is." McFadden then ordered a victim employee to the backroom, while Williams proceeded to force the other victim employee to give him cash from the cash registers. McFadden proceeded to steal video game systems from the backroom, while the victim employee laid on the ground. Williams then entered the backroom and asked for the passcode to the safe, which the victim employee in that room said he did not know. While this was happening, McFadden went back to the counter and finished emptying out the registers. Williams and McFadden left after that. Once again, video cameras captured the robbery. McFadden was wearing a blue/navy t-shirt with the "NB" logo for New Balance and a blue baseball hat with a star on it, matching the emblem for the Dallas Cowboys football team. McFadden's Instagram account included several pictures of him in a matching blue hat with a star on it and several pictures of him in a matching "NB" navy t-shirt. The items stolen from the store included:

- $414.00 in U.S. Currency
- 1 Playstation 4 System PO (SKU 909275)
- 1 Playstation 4 Slim 1 Terabyte blu (SKU 171272)
- 1 Xbox One S White (SKU 131069)
- 1 Playstation 4 New (SKU 141794; Serial # MD634299476)
- 1 Playstation 4 New (SKU 141794; Serial # MD634299669)
- 1 Playstation 4 New (SKU 141794; Serial # MD634299672)

Investigators obtained records from Sony entertainment related to the online use of the Sony game systems stolen during these robberies. One of the Playstation 4 systems stolen on August 28, 2018 was linked, by serial number, to a Sony online account for "KeezDaCapo." The KeezDaCapo account was created on August 28, 2018. The name linked to the account is "Kelvin Mcfadden" and the date of birth and telephone number on the account match McFadden's information. A photo recovered from McFadden's Instagram account depicts McFadden's face and includes the text, "Keeezz". The same Playstation 4 that was stolen on August 28, 2018 and linked to the KeezDaCapo account was sold to a pawn shop on September 20, 2018 by a close associate of McFadden's. According to jail visit logs, that close associate visited McFadden while he was detained in state custody within three hours of having pawned the Playstation 4.

The fourth, and final, GameStop robbery occurred on or about September 1, 2018 at or near 6730 York Road, Baltimore, Maryland. Williams and McFadden robbed this store in much the same way. Again, Williams wielded what appeared to be a handgun and pointed it at two victim employees. The pair again proceeded to steal cash from the registers and the safe and steal video game systems from the backroom, all while forcing the victim employees to comply with orders. This time, Williams was wearing a blue baseball hat with a white, Dallas Cowboys star on it, which matched the hat McFadden wore during the robbery three days prior. Williams was also wearing a maroon "Guess" t-shirt with dark sleeves. McFadden wore a light and black "Spurs" baseball hat, matching the one he wore during the August 25 robbery and the one Williams wore during the August 21 robbery. McFadden also wore a blue/navy t-shirt with no visible logo and blue/navy capris sweat pants with white draw strings. The items stolen from the store included:

- $968.00 in U.S. Currency
- 1 Playstation 4 New 1 Terabyte (SKU 147255; Serial # MG358380106)
- 1 Playstation 4 New 1 Terabyte (SKU 147255; Serial # MG358379490)
- 1 Playstation 4 New 1 Terabyte (SKU 147255; Serial # MG358379483)
- 1 Playstation 4 New 1 Terabyte (SKU 147255; Serial # MG357985197)
- 1 new Xbox1x (SKU 155211; Serial # 040778174217)
- 1 Nintendo Switch (SKU 141794; Serial # XAW10048992939)
- 1 Playstation 4 System PO (SKU 131999)
- 1 Playstation 4 System PO (SKU 909275)
- 1 Playstation 3 500G (SKU 909134)
- 1 Playstation 3 Slim 160G (SKU 909126)
- 1 Playstation 3 160G (SKU909120)
- 1 Playstation 3 250G (SKU909131)

Williams and McFadden also inadvertently took a "cashtracker" device, along with the cash from the store. This device emits its geographic location and speed. Law enforcement who responded to the robbery were able to use the cash tracker to locate a two-door 2003 Honda Accord, which was registered to McFadden, and was fleeing from the scene of the robbery. Police dispatched a helicopter, and the helicopter was able to locate McFadden's Honda and follow it. The helicopter recorded a video of its pursuit using technology that allows nighttime recording of objects that emit heat. The helicopter saw the Honda stop at a location near North Stricker Street in Baltimore, and saw two people flee from the car and bang on the back door of an apartment. After securing the perimeter, police knocked on the door of the apartment, where the resident allowed police to come inside. Police found McFadden and Williams inside the apartment, and both were taken into custody. Police obtained search warrants for the Honda and for the Apartment.

Law enforcement recovered numerous pieces of evidence from inside the Honda, including:

- Numerous game systems matching those just stolen from the GameStop;
- The cash tracker device from the Game Stop, concealed within a wad of cash;
- A blue baseball hat depicting the Dallas Cowboys star, which matched the hat worn by Williams during the September 1 robbery and the hat worn by McFadden during the August 21 robbery;
- A light and black "Spurs" baseball hat, which matched the hat worn by McFadden during the September 1 robbery, the hat worn by McFadden during the August 25 robbery, and the hat worn by Williams during the August 21 robbery;
- A wallet with identification information for Stewart Williams;
- A wallet with identification information for Kelvin McFadden;
- A "Black Crossman 1911BB Air Pistol" which matched the apparent handgun used during the four robberies;
- One phone, which was later determined to belong to Kelvin McFadden;
- One phone, which was later determined to belong to Stewart Williams; and
- Loose cash, recovered inside of a black trash bag.

Law enforcement also recovered evidence from inside the apartment, including a maroon "Guess" t-shirt with dark-colored sleeves, matching the shirt worn by Williams during the September 1 robbery. The Guess t-shirt had been partially destroyed by being cut and was located within a trash can. Investigators were also able to recover a fingerprint from the front door of the York Road GameStop—which was robbed on September 1—that matched McFadden's left ring finger.

After being *Mirandized*, both McFadden and Williams provided statements. McFadden's statements included the following:

- McFadden said he was not the one with the gun.
- McFadden discussed his car, discussed the logistics surrounding the possible release of the Honda to a family member, and acknowledged that the Honda Accord was his car.
- When shown a still photograph recovered from video surveillance cameras, McFadden admitted that he was the person depicted in one of the photographs of the September 1 robbery.
- McFadden said in response to a still photograph from the August 28 robbery, "it look like me."
- McFadden stated that he used to work at a GameStop.
- When asked if he would have hurt the people in the stores, McFadden shook his head no. McFadden also said that he "let them know" and when asked for clarification, nodded in agreement that he meant he let the people in the stores know that he would not hurt them.

During questioning, as captured on video, McFadden is wearing the clothes that he was arrested in. McFadden is wearing blue/navy capris sweat pants with white draw strings that match the ones he wore during the September 1 robbery. Interestingly, McFadden is also wearing a blue/navy t-shirt with the "NB" New Balance logo on the front, which matched the t-shirt he wore during the August 28 robbery. Evidently, in an attempt to evade detection, McFadden changed his shirt after the September 1 robbery before he was arrested, but the shirt he changed into was one he had worn during a previous robbery.

Williams's statements included the following:

- Williams originally said he did not do the robberies.
- When asked if he would have hurt the people, Wililams said "hell no."
- When asked about the gun and after being told he had shown it to people, Williams said something like, "I'll let you in on a little secret, it wasn't real."
- When asked where the gun was now, Williams said something like, "I thought you found it" when he was told that investigators were still conducting searches, Williams said something like, "Ain't trying to throw nothing away cause I knew I didn't have to worry about that to be honest with you."
- When asked what he got out of the place, Williams said that it was only games as far as he knew, and said something like he "didn't even touch the money or nothing." (McFadden was the one who went to the registers during the 9/1 robbery).
- After the above, when told that investigators were searching the car, Williams said

- When asked if he was involved with selling the game systems, Williams said that he was not really involved with it. When asked further if he got anything for the robberies, Williams said something like, "yeah like on the street, might sometimes give them away."
- When asked if he was rewarded for risking himself, Williams remarked that the risk was not worth the reward.

SO STIPULATED:

_____
Daniel A. Loveland, Jr.
Clinton J. Fuchs
Assistant United States Attorneys

_____  9/5/19
Kelvin McFadden
Defendant

_____  9/5/19
David Fischer, Esq.
Counsel for Defendant